CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Edson Appleton, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:25-cv-00001 |
| | ) |
| Orange County School Board, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Edson Appleton, a former teacher and coach for Orange County Public Schools, filed this lawsuit against the Orange County School Board (the "School Board") alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Virginia Human Rights Act ("VHRA"), and the Virginia Whistleblower Protection Law ("VWPL"). This matter is before the court on the School Board's motion to dismiss Appleton's amended complaint (Dkt. 14). For the reasons that follow, the court will grant the School Board's motion.

## I.      Background

### A. Factual History

The facts in this section are taken from Appleton's amended complaint. The court accepts them as true when resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The School Board hired Appleton as a teacher and strength and conditioning coach in July 2023. (Am. Compl. ¶ 13 (Dkt. 10).) Appleton, who is Black, was assigned to work at Orange County High School ("OCHS") for the 2023–24 school year. (*Id.* ¶¶ 8, 13.) During the fall 2023 semester, he taught three different courses: Nutrition and Wellness, Strength and Conditioning, and Introduction to Medical Health and Services. (*Id.* ¶ 13.) The Strength and Conditioning course was supposed to be "the primary focus for his teaching." (*Id.* ¶ 17.) He was responsible for developing the Nutrition and Wellness course, which the school had not previously offered. (*Id.* ¶ 15.) He states that he "performed his duties in an outstanding manner" despite having no prior experience teaching high school. (*Id.* ¶ 14.)

In November 2023, Appleton learned the school was assigning him to teach three Nutrition and Wellness classes in 2024 (he taught only one during the fall 2023 semester). (*Id.* ¶ 16.) Appleton "was not consulted in advance" about the changes to his teaching assignment. (*Id.* ¶ 17.) He also learned that the Strength and Conditioning class was being reassigned to a "Caucasian" teacher. (*Id.* ¶ 16.) Appleton alleges that the newly assigned teacher was not qualified to teach Strength and Conditioning and was later removed from the role for that reason. (*Id.*)

According to Appleton, the school lacked a sufficient budget to support three Nutrition and Wellness classes. (*Id.* ¶ 17.) At times, he used his own money to cover certain necessary expenses for the course. (*Id.*) Appleton "complained about these issues to school

management personnel," including his immediate supervisor and Wayne Price, the principal of OCHS.[1]  (*Id.* ¶ 20.)

On March 27, 2024, "a student with a documented history of disruptive and aggressive behavior[] engaged in wrongful and threatening conduct" in one of Appleton's classes.  (*Id.* ¶ 21.)  Appleton responded to the student's conduct "in a reasonable manner designed to control the situation, to maintain calm in the classroom, and to hold the student accountable for not following the rules and expectations in the classroom."  (*Id.* ¶ 22.)  He does not elaborate further on the incident aside from stating that his employer had not properly trained or equipped him to address the student's misconduct.  (*Id.*)

The same day the classroom incident occurred, Appleton was removed from his teaching and coaching duties and placed on administrative leave.  (*Id.* ¶ 23.)  That decision apparently was prompted by a complaint about how he had handled the incident, which Appleton says falsely characterized his actions.  (*Id.* ¶¶ 23, 25.)  Appleton met with Price, Yvonne Dawson, and Renee Honaker on March 27 to discuss the incident.  (*Id.* ¶ 23.)  Dawson is the Executive Director of Human Resources for Orange County Public Schools; Honaker is the Director of Secondary Instruction.  (*Id.* ¶¶ 26–27.)  Price and Dawson are both Caucasian; Honaker's race is unspecified.  (*Id.* ¶¶ 20, 26.)  During the discussion, Price said he would accept Appleton's two-week notice if he wished to submit it.  (*Id.* ¶ 23.)  Price also commented on Appleton's "physical size and appearance," describing him as "a 'big' and 'scary' guy."  (*Id.*)

---

[1] Without providing more detail, Appleton alleges that the School Board treated similarly situated teachers, who are not Black, differently on "these types of issues."  (Am. Compl. ¶ 19.)  But he does not allege that he raised concerns about racial discrimination in his communications with his supervisor and Price.

On April 12, 2024, Appleton contacted Dawson to complain about his treatment.  (*Id.* ¶ 26.)  He told her that his "experience as a new employee at OCHS has been extremely unprofessional, unethical and honestly one of the worst experiences [he has] ever had with an employer."  (*Id.*)  He asked for Dawson's assistance "in opening an investigation of a few negligent and discriminatory employment practices [he had] personally experienced while being employed by OCHS."  (*Id.*)  Appleton met with Dawson and Honaker four days later, on April 16, 2024, and "further explained about the issues for which he felt he was not given the support that he needed."  (*Id.* ¶ 27.)

Appleton, Dawson, and Honaker met again on April 29, 2024.  (*Id.* ¶ 28.)  During that meeting, Appleton "was told in substance that if he did not resign his position, they could move to terminate his employment."  (*Id.*)  Appleton was informed that the School Board would meet that night and again a few days later, which he says conveyed the "unmistakable message" that he could either resign (and receive pay through the end of the school year) or face termination.  (*Id.*)  In response to his questions, Dawson "said that allowing him to resign, and paying him through the end of the school year, was meeting him half-way and that alternatively, they could move to terminate his employment."  (*Id.*)  During the meeting, Dawson also "admitted that the school's administration was wrong not to have provided [Appleton] with observations (and feedback from such) during the school year," and she said the administration had started to address the concerns he had raised so they could correct them in the future.  (*Id.*)

Appleton is unaware if Dawson or anyone else investigated the complaint of "discriminatory employment practices" he raised on April 12.  (*Id.* ¶ 31.)  Dawson did not

mention that issue during their meetings later in April or ask him what he meant by the term "discrimination." (*Id.*)

Appleton compares his treatment to the School Board's treatment of Caleb Heppe, a Caucasian teacher and coach who worked at Locust Grove Middle School in Orange County. (*Id.* ¶ 33.) Heppe coached the middle school's baseball team during the 2023–24 school year, and Appleton alleges that Heppe engaged in physically and verbally abusive conduct towards players on the team. (*Id.*) Appleton further alleges that the School Board, Dawson, and other school administrators were aware of Heppe's conduct but did not discipline him, place him on administrative leave, or threaten to terminate his employment unless he resigned. (*Id.* ¶¶ 33–37.)

Appleton submitted his resignation on May 3, 2024. (*Id.* ¶ 29.) He decided to resign based on Dawson's comments during the April 29 meeting and "the context of the situation." (*Id.* ¶ 30.) After he resigned, Appleton dual-filed a Charge of Discrimination and Retaliation with the United States Equal Employment Opportunity Commission ("EEOC") and the Office of Civil Rights ("OCR") in the Virginia Attorney General's Office. (*Id.* ¶ 43.) The EEOC issued a Determination and Notice of Right to Sue on August 8, 2024. (*Id.* ¶ 44.)

### B. Procedural History

Appleton initially filed this action in the Circuit Court of Orange County, Virginia, on November 6, 2024. (Compl. (Dkt. 1-1).) He named the School Board and Orange County Public Schools as defendants and alleged claims for racial discrimination and retaliation under both Title VII and the VHRA. (*Id.*) Defendants timely removed the case to this court on January 8, 2025, (Dkt. 1), then moved to dismiss the original complaint on February 7, 2025,

(Dkt. 8). On February 28, 2025, Appleton filed an amended complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B), which mooted the original motion to dismiss. (*See* Am. Compl.; Dkt. 13.)

The amended complaint removes Orange County Public Schools as a defendant and adds a cause of action for retaliation under the VWPL, Va. Code Ann. § 40.1-27.3. Count I of the amended complaint alleges race discrimination in violation of Title VII. (Am. Compl. ¶¶ 45–56.) Count II alleges the same discrimination claim under the VHRA. (*Id.* ¶¶ 57–67.) Counts III and IV allege retaliation claims under Title VII and the VHRA, respectively. (*Id.* ¶¶ 68–89.) Lastly, Count V alleges the new retaliation claim under the VWPL. (*Id.* ¶¶ 90–96.) Appleton seeks back pay, either reinstatement or front pay, and compensatory damages. (*Id.* at 22–23.)

On March 24, 2025, the School Board moved to dismiss the amended complaint. (Dkt. 14.) The School Board argues that it is entitled to sovereign immunity from all of Appleton's state-law claims, and that Appleton fails to allege sufficient facts to support any of his discrimination or retaliation claims. (*See id.*; Def.'s Br. (Dkt. 15).) Appleton filed a response opposing the motion to dismiss, (Pl.'s Resp. (Dkt. 16)), to which the School Board replied, (Def.'s Reply (Dkt. 17)).

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir.

2016)).  To survive a 12(b)(6) motion, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  But to avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III.    Analysis

### A.  Title VII Discrimination (Count I)

Count I alleges that the School Board constructively terminated Appleton's employment based on his race, which constitutes unlawful disparate treatment under Title VII.[2]  (*See* Am. Compl. ¶¶ 49–51.)  The disparate-treatment provision of Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

---

[2] Certain allegations in Count I appear to assert different theories of discrimination under Title VII, including an alleged hostile work environment.  (Am. Compl. ¶ 49.)  But in his response to the School Board's motion to dismiss, Appleton confirms that Count I focuses solely on his constructive discharge.  (*See* Pl.'s Resp. at 7–13.)  The court therefore presumes that Appleton included the allegations of a hostile work environment to support his constructive discharge claim, rather than as a separate Title VII discrimination claim.

origin." 42 U.S.C. § 2000e-2(a)(1); *see E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). A plaintiff who brings a Title VII disparate-treatment claim must show that his protected status was a "motivating factor" behind the adverse employment action he experienced. 42 U.S.C. § 2000e-2(m).

A plaintiff may prove disparate treatment through direct or circumstantial evidence of a discriminatory motive or by relying on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). Appleton's brief in opposition to the motion to dismiss indicates that he intends to rely on the latter. (*See* Pl.'s Resp. at 7–13.) To ultimately prevail under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See Spencer*, 919 F.3d at 207. In the typical disparate-treatment case, a plaintiff must satisfy four *prima facie* elements: (1) membership in a protected class, (2) satisfactory job performance, (3) an adverse employment action, and (4) different treatment from similarly situated employees outside the protected class or some other circumstances that suggest an unlawfully discriminatory motive. *See id.*; *Cosby v. S.C. Probation, Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024).

A plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Instead, when reviewing a Rule 12(b)(6) motion, the court asks whether the plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing*, 959 F.3d at 617 (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)); *see McCleary-Evans v. Md. Dep't Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). That said, the *prima facie* elements may be relevant when determining whether a plaintiff has

- 8 -

stated a disparate-treatment claim. *See, e.g., Coleman*, 626 F.3d at 191 (affirming dismissal of Title VII race-discrimination claim because complaint did not allege facts that plausibly suggested a white employee was similarly situated yet treated differently).

The School Board argues that Appleton's Title VII discrimination claim fails because he has not alleged enough facts showing that he was constructively discharged or faced any other adverse employment action, that his job performance was satisfactory at the time of the alleged constructive discharge, or that he was treated differently than a similarly situated non-Black employee.  (Def.'s Br. at 8.)  The court finds that Appleton has sufficiently alleged constructive discharge but has not pled facts showing that he was meeting legitimate employment expectations at the time of the discharge.

   1.  <u>Adverse employment action</u>

Appleton alleges that he suffered a single adverse employment action: his constructive discharge in May 2024.  (*See* Pl.'s Resp. at 8.)  Constructive discharge occurs where circumstances make an employee's resignation "tantamount to an actual discharge." *Green v. Brennan*, 578 U.S. 547, 555 (2016).  A constructive discharge claim has two elements.  First, the plaintiff must show that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Id.*  This is an objective standard; it is not enough that "a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or the best decision, or even that the employee subjectively felt compelled to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (citations omitted).  Second, the plaintiff must show that he actually resigned in the face of those circumstances. *Green*, 578 U.S. at 555.

Constructive discharge claims often involve alleged harassment or abusive working conditions.  *See, e.g.*, *Perkins*, 936 F.3d at 211–12; *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).  But courts in the Fourth Circuit have recognized that constructive discharge also may occur where "an employer acts in a manner so as to have communicated to a reasonable employee that she *will* be terminated."  *EEOC v. MVM, Inc.*, Civ. No. TDC-17-2864, 2018 WL 2197727, at *12 (D. Md. May 14, 2018) (quoting *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (emphasis added)); *see also Bauer v. Holder*, 25 F. Supp. 3d 842, 852 (E.D. Va. 2014) (stating that a resignation may amount to a constructive discharge where it "is deemed to be coerced or involuntary"), *vacated on other grounds*, *Bauer v. Lynch*, 812 F.3d 340 (4th Cir. 2016).  "Under this theory, an environment in which an employer makes clear to an employee her termination was imminent and that 'the axe was about to fall' may be objectively intolerable."  *Decoster v. Becerra*, No. TDC-21-2195, 2022 WL 3083343, at *4 (D. Md. Aug. 3, 2022) (quoting *Univ. of Chi. Hosps.*, 276 F.3d at 332).  On the other hand, "[a] working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background."  *Allen v. Balt. Cnty. Bd. of Educ.*, No. ELH-21-1006, 2023 WL 5352416, at *9 (D. Md. Aug. 21, 2023) (quoting *Hodge v. N.C. Dep't of Pub. Safety*, No. MR-20-16, 2021 WL 2652953, at *5 (W.D.N.C. June 28, 2021)).[3]

---

[3] In some Title VII cases, district courts have applied the factors the Fourth Circuit outlined in *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167 (4th Cir. 1988), to evaluate whether an employee was constructively discharged.  *See, e.g.*, *Bauer*, 25 F. Supp. 3d at 852 & n.16.  The *Stone* decision addressed a due process claim brought under 42 U.S.C. § 1983.  *See Stone*, 855 F.2d at 172–73.  The plaintiff, a former state employee, alleged that his resignation amounted to a constructive discharge and therefore constituted state action that deprived him of his constitutionally protected property interest in continued employment.  *See id.*  The Fourth Circuit identified four factors to guide that constructive-discharge inquiry: (1) whether the employer gave the employee some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employer gave the employee a reasonable amount of time to make a decision; and (4) whether the employer allowed the employee to select the effective date of his resignation.  *Id.* at 174–75.  Here, application of the *Stone* factors would point in the same direction as a general, objective analysis of whether Appleton's termination was imminent.

The facts alleged in the amended complaint plausibly support a constructive discharge claim under this framework. As a starting point, they show that school administrators repeatedly made comments that encouraged Appleton to resign. Price offered to accept his two-week notice on March 27, 2024. (Am. Compl. ¶ 23.) On April 29, 2024, Dawson told Appleton that "allowing him to resign, and paying him through the end of the school year, was meeting him half-way and that alternatively, they could move to terminate his employment." (*Id.* ¶ 28.) Viewed in the light most favorable to Appleton, those comments would place a reasonable person on notice that his employer did not want him to remain employed. *See Hunt v. City of Markham*, 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with his employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable.")

The alleged facts also support a reasonable inference that Appleton's termination was imminent. Dawson and Honaker's threat "to terminate his employment" if he did not resign was not just hypothetical or probable. (Am. Compl. ¶ 28.) When they raised the prospect of termination on April 29, they also informed Appleton that the School Board would meet that night and again a few days later. (*Id.*) Drawing reasonable inferences in Appleton's favor, those statements made the threat of termination an urgent concern to Appleton as the School Board is a body that would have the final authority to terminate him. In addition, there is no indication that Dawson, Honaker, or Price informed Appleton of his options for defending himself before the School Board. And while Appleton did not submit his resignation on April

29, he did resign only four days later. (*Id.* ¶ 29.) Under these circumstances, it is plausible that a reasonable person in Appleton's position "would have felt compelled to resign." *Green*, 578 U.S. at 555. The court therefore finds that Appleton has sufficiently alleged an adverse employment action based on his constructive discharge.

### 2. Satisfactory job performance

The School Board next argues that Appleton's Title VII discrimination claim fails because he has not shown that his job performance was satisfactory at the time of the adverse employment action. (Def.'s Br. at 9.) Appleton responds by arguing that the motion-to-dismiss stage is not the appropriate time to consider that *prima facie* element. (Pl.'s Resp. at 8.) But he agrees that satisfactory job performance is one of the *prima facie* elements for his Title VII discrimination claim,[4] (*see id.* at 7), so the alleged facts regarding his performance are relevant when considering whether he has stated a plausible claim. *See, e.g.*, *Edouard v. John S. Connor, Inc.*, No. 2:22-cv-263, 2023 WL 3127622, at *5 (E.D. Va. Apr. 27, 2023) (dismissing Title VII discrimination claim because the plaintiff failed to allege that her job performance was satisfactory at the time of her termination); *Mumpower v. City of Bristol*, No. 1:13-cv-00074, 2014 WL 992095, at *3 (W.D. Va. Mar. 14, 2014) (same).

The alleged facts do not plausibly show that Appleton was performing satisfactorily at the time he resigned on May 3, 2024. Appleton asserts that he "performed his duties in an outstanding manner," (Am. Compl. ¶ 14), but he offers no factual support for that conclusory statement. "[W]hether an employee met his employer's legitimate expectations at the time of

---

[4] The Fourth Circuit has outlined different *prima facie* elements for Title VII discrimination claims alleging disparate enforcement of disciplinary measures. Such claims do not require proof of satisfactory job performance. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985). Neither party argues that that framework should apply in this case.

termination depends on the 'perception of the decision maker[,] . . . not the self-assessment of the plaintiff.'" *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)).  Appleton has not plausibly pled any facts that support a reasonable inference that he was meeting his employer's legitimate job expectations as of May 2024.  *Cf. Nigro v. Va. Commonwealth Univ. Med. College of Va.*, No. 5:09-cv-00064, 2010 WL 2262539, at *9 (W.D. Va. June 4, 2010) (holding that plaintiff sufficiently alleged satisfactory job performance by stating that she received passing evaluations from supervisors).  Without any such allegations, Appleton's Title VII discrimination claim does not rise "above the speculative level."  *Bing*, 959 F.3d at 616. Accordingly, the court will dismiss Count I without prejudice.

### B. Title VII Retaliation (Count III)

Count III alleges that the School Board violated Title VII by retaliating against him for complaining of discrimination.  (Am. Compl. ¶¶ 70–71.)  Title VII prohibits an employer from retaliating against an employee who engages in two categories of activity: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII; and (2) participating in a Title VII investigation or proceeding.  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, Appleton must show (1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that a causal link existed between his protected activity and the adverse employment action.  *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025).  As with a Title VII discrimination claim, a plaintiff alleging a Title VII retaliation claim need not establish a *prima facie* case to survive a motion to dismiss under Rule 12(b)(6).  *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024).  Still, to state a claim, the plaintiff "must allege

facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." *Id.* (cleaned up). The School Board argues that Appleton has not plausibly alleged that he engaged in a protected activity, that he suffered an adverse employment action, or that the facts support an inference of causation. (Def.'s Br. at 17–22.)

As to the first element, Appleton argues that the April 12, 2024 complaint he sent to Dawson qualifies as protected oppositional activity under Title VII. (Pl.'s Resp. at 13–14.) The Supreme Court and Fourth Circuit have "articulated an expansive view of what constitutes oppositional conduct" under Title VII. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Oppositional conduct "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). The employee's conduct "must be directed to 'an unlawful employment practice' under Title VII," but courts should interpret "unlawful employment practice" broadly. *Id.* (quoting 42 U.S.C. § 2000e-3(a)); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc)). Appleton is protected from retaliation if his "course of conduct as a whole (1) communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination, and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." *DeMasters*, 796 F.3d at 417 (internal quotation marks and citations omitted).

The School Board argues that Appleton's internal complaint to Dawson cannot meet that standard because it did not provide reasonable notice that he was alleging an unlawful

employment practice. (Def.'s Br. at 18–19.) Appleton offers the following description of the complaint:

> On April 12, 2024, in communicating with Yvonne Dawson (Caucasian), Executive Director of Human Resources for the Orange County Public Schools, [Appleton] complained that his "experience as a new employee at OCHS has been extremely unprofessional, unethical and honestly one of the worst experiences I've ever had with an employer" and he further requested her assistance "in opening an investigation of a few negligent and discriminatory employment practices I've personally experienced while being employed by OCHS."

(Am. Compl. ¶ 26.) There is no indication that Appleton connected the "discriminatory employment practices" to his race in the complaint to Dawson or during other discussions with school administrators. (*See id.* ¶¶ 26–28.) Appleton alleges few facts that suggest his overall course of conduct, or the surrounding context, placed Dawson on notice that he was complaining of unlawful racial discrimination. Nonetheless, the court will assume that Appleton has sufficiently alleged that his April 12, 2024 complaint was protected oppositional activity. Even if the complaint so qualifies, Appleton has not plausibly alleged any causal connection between that protected activity and an adverse employment action.

To state a retaliation claim, Appleton must allege a non-speculative causal link between his protected activity and an adverse employment action. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022). In other words, he must plausibly "show that his employer took the adverse action *because* of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (internal quotation marks omitted). Appleton may demonstrate causation by showing (1) "the adverse act bears sufficient temporal proximity to the protected activity," (2) "the existence of facts that suggest that the adverse action occurred because of the protected activity," or (3) a combination of the two. *Laurent-Workman*, 54 F.4th at 218

- 15 -

(internal quotation marks omitted).  "Temporal proximity between an employer's knowledge of protected activity and an adverse employment action may establish causation only if it is very close." *Id.* (cleaned up).  The Fourth Circuit has explained that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Here, the alleged facts do not support a reasonable inference that the School Board took adverse action against Appleton because of his protected activity.  While Appleton asserts that his constructive discharge was one retaliatory action,[5] he claims that several events that predated his April 12, 2024 complaint also "demonstrate[] the retaliatory intent" of the School Board.  (Am. Compl. ¶ 71.)  He specifically mentions his placement on administrative leave on March 27, 2024, following the classroom incident, as well as the general lack of training, observation, and feedback he received from school administrators.  (*Id.*)  Because those actions began before his protected activity, they cannot support an inference of retaliation.  *See, e.g., Ford v. Northam*, No. 7:22-cv-00122, 2023 WL 2767780, at *14 (W.D. Va. Mar. 31, 2023).  The fact that the School Board placed Appleton on administrative leave more than two weeks before he filed the April 12, 2024 complaint also undermines his claim that his later constructive discharge was retaliatory.  *See Dimaano v. Va. Ctr. for Behav. Rehab.*, No. 3:23-cv-

---

[5] "Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation."  *Lindsey v. Alliant Tech Sys. Inc.*, No. 7:12-cv-00508, 2013 WL 3524449, at *8 n.10 (W.D. Va. July 11, 2013) (quoting *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995)).  A plaintiff who alleges a retaliatory constructive discharge "must make out an actionable claim of retaliation and show the elements of a constructive discharge claim."  *Walker v. Regan*, No. 1:21-cv-312, 2023 WL 6224635, at *3 (E.D. Va. Sept. 22, 2023).  As noted above, Appleton has plausibly alleged that he was constructively discharged.

312, 2024 WL 3823795, at \*20–21 (E.D. Va. Aug. 13, 2024) (dismissing Title VII retaliation claim for lack of causation where the plaintiff was under investigation for misconduct at the time of his alleged protected activity and failed to allege that he was meeting legitimate performance expectations).  Appleton has not alleged that he was meeting his employer's legitimate performance expectations at the time of his alleged protected activity or his resignation.  *See id.*; *see also Laurent-Workman*, 54 F.4th at 219 (holding that a plaintiff did not sufficiently plead a causal link between her protected activity and her non-selection for a position where the alleged facts did not show she was qualified for the position).

Ordinarily, the rather close temporal proximity between Appleton's April 12, 2024 complaint and his alleged constructive discharge on May 3, 2024, would be enough to show causation.  *See Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 879 (4th Cir. 2020).  But because Appleton has alleged that a pattern of unfavorable treatment began well before he complained of discrimination, he cannot establish a plausible causal link based on temporal proximity alone.  *See Francis*, 452 F.3d at 309; *see also Britt v. DeJoy*, No. 20-1620, 2022 WL 4280495, at \*5 (4th Cir. Sept. 14, 2022) (per curiam) (affirming dismissal of Rehabilitation Act retaliation claim for lack of causation, despite close temporal proximity, where the plaintiff was placed on unpaid leave for her involvement in an altercation three weeks before her protected activity).

Appleton argues that he has pled a causal link by alleging that school administrators did not threaten him with termination until after his protected activity on April 12, 2024.  (Pl.'s Resp. at 15–16.)  Those allegations, when considered alongside the other facts in the amended complaint, do not allow the court to draw a reasonable inference of causation.  Price first

offered to accept Appleton's resignation on March 27, 2024, before Appleton complained of discrimination.  (Am. Compl. ¶ 23.)  Although school administrators did not raise the prospect of termination until April 29, 2024, (*see id.* ¶ 28), they had taken disciplinary action and begun inviting Appleton to resign before he engaged in any protected activity.  Dawson's later statements regarding termination support Appleton's constructive discharge claim, but they do not plausibly show that his alleged constructive discharge was retaliatory.  Appleton also argues that Dawson's failure to mention his discrimination complaint during their meetings in late April reflects her retaliatory intent, (Pl.'s Resp. at 15; *see* Am. Compl. ¶ 31), but those allegations, too, are insufficient to demonstrate causation.

Because the amended complaint does not allege a non-speculative causal link between protected activity and an adverse employment action, the court will dismiss Appleton's Title VII retaliation claim (Count III) without prejudice.

### C.  State-Law Claims (Counts II, IV, and V)

The School Board also moves to dismiss Appleton's three state-law causes of action (Counts II, IV, and V), which allege discrimination and retaliation claims under the VHRA and a retaliation claim under the VWPL.  The School Board argues that it is entitled to sovereign immunity from claims brought under either statute.  (Def.'s Br. at 6–7; Def.'s Reply at 1–11.)  A court in this district has previously held that school boards, as agencies of the Commonwealth, are immune from suit under the VHRA.[6]  *Mais v. Albemarle Cnty. Sch. Bd.*, 657

---

[6] To support his argument that sovereign immunity does not apply here, Appleton relies primarily on an unpublished panel decision by the Court of Appeals of Virginia.  *See Drasovean v. Walts*, No. 0259-23-4, 2024 WL 4683464 (Va. Ct. App. Nov. 6, 2024).  That decision held that school boards should be treated as municipal corporations rather than as arms of the state and therefore do not enjoy absolute sovereign immunity from tort suits.  *Id.* at *7–10.  In July 2025, the Court of Appeals reheard the case *en banc* and reached the opposite conclusion, holding that school boards are agencies of the

F. Supp. 3d 813, 826–27 (W.D. Va. 2023); *see Jordan v. Sch. Bd. of City of Norfolk*, 111 Va. Cir. 429, 429–30 (Va. Cir. Ct. June 13, 2023) (agreeing with the holding in *Mais*).

The court will not resolve those issues here, as it declines to exercise supplemental jurisdiction over Appleton's three state-law claims. The claims fall outside of the court's original jurisdiction, as the parties do not satisfy the diversity-of-citizenship requirements of 28 U.S.C. § 1332. Appleton is a citizen of Virginia, (Am. Compl. ¶ 1), and the School Board is also treated as a Virginia citizen for diversity purposes, *see Roach v. Botetourt Cnty. Sch. Bd.*, 757 F. Supp. 2d 591, 592 n.1 (W.D. Va. 2010) (citing *Moor v. County of Alameda*, 411 U.S. 693, 718 (1973)).

A district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (citation omitted). In deciding whether to exercise supplemental jurisdiction in this scenario, the court weighs multiple factors, including "judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

---

Commonwealth and entitled to absolute immunity from tort liability. *Drasovean v. Walts*, 917 S.E.2d 518, 521–22 (Va. Ct. App. 2025).

The court finds that the relevant factors weigh in favor of declining to exercise supplemental jurisdiction here. Declining supplemental jurisdiction would facilitate judicial economy, and there is little reason to believe it would inconvenience or prejudice the parties at this stage of the litigation. Appleton originally filed this case in state court, and he specifically asks the court to decline to exercise supplemental jurisdiction in the event it dismisses his federal claims. (*See* Am. Compl. ¶ 3.) It would not be particularly inconvenient for the School Board to litigate the state claims in state court, should Appleton wish to pursue them. The comity factor also weighs in favor of declining supplemental jurisdiction. Appleton's VHRA and VWPL claims raise questions about whether those statutes waive the sovereign immunity of school boards, and Fourth Circuit precedent "evince[s] a strong preference that state law issues be left to state courts." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010).

For these reasons, the court will decline to exercise supplemental jurisdiction over Counts II, IV, and V and dismiss those counts without prejudice.

## IV.    Conclusion

For the reasons outlined above, the court will **GRANT** the School Board's motion to dismiss the amended complaint (Dkt. 14). The court will **DISMISS** Counts I and III of the amended complaint **without prejudice**. The court declines to exercise supplemental jurisdiction over Counts II, IV, and V and will **DISMISS** those counts **without prejudice**. The court will **GRANT** Appleton leave to amend within 21 days of the date of the court's accompanying Order. If Appleton does not file an amended complaint by that date, the court will dismiss Counts I and III with prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this <u>18th</u> day of September, 2025.


_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE