CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

August 10, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Edson Appleton, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00001 |
| | ) | |
| Orange County School Board, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Edson Appleton, a former teacher and coach for Orange County Public Schools, filed this lawsuit against the Orange County School Board (the "School Board") alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Virginia Human Rights Act ("VHRA"), and the Virginia Whistleblower Protection Law ("VWPL"). This matter is before the court on the School Board's motion to dismiss Appleton's second amended complaint. (Dkt. 28.) For the following reasons, the court will grant the School Board's motion.

## I.      Background

Appleton originally filed this action in the Circuit Court of Orange County, Virginia, on November 6, 2024. (Dkt. 1-1 at 14.) After the School Board removed the action to this court, Appleton filed an amended complaint as a matter of course on February 28, 2025. (Dkt. 10.) The School Board moved to dismiss on March 24, 2025. (Dkt. 14.)

On September 18, 2025, the court granted the School Board's motion to dismiss. (Dkts. 24, 25.) The court found that Appleton failed to state a claim for discrimination (Count I) or retaliation (Count III) under Title VII and declined to exercise supplemental jurisdiction over the remaining state-law claims (Counts II, IV, and V). (*See generally* Dkt. 24.) On Count I, the court found that Appleton sufficiently alleged an adverse employment action based on his constructive discharge but failed to sufficiently allege that his job performance was satisfactory at the time of the adverse employment action. (*See id.* at 9–13.) On Count III, the court assumed without deciding that Appleton sufficiently alleged protected oppositional activity but found that he did not plausibly allege any causal connection between that protected activity and an adverse employment action. (*See id.* at 14–18.)

On October 9, 2025, Appleton filed a second amended complaint. (Sec. Am. Compl. (Dkt. 26).) Appleton's second amended complaint re-alleges the same five counts and adds factual allegations purporting to support his Title VII claims: (1) that he was meeting the School Board's legitimate employment expectations at the time he resigned his position, (*see id.* ¶ 14); and (2) that the School Board retaliated against him *because* he complained of racial discrimination, (*see, e.g., id.* ¶¶ 22–24, 27, 31–32). The court assumes familiarity with the facts of the case as initially asserted, which are discussed in detail in the court's previous memorandum opinion. (*See* Dkt. 24 at 1–5.) In resolving the School Board's motion to dismiss, the court will focus on the new facts alleged in Appleton's second amended complaint and will discuss these specific facts in its analysis below.

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Bing*, 959 F.3d at 616.  At the motion to dismiss stage, the court may consider exhibits attached to a complaint as part of the pleadings if they are integral to the complaint and there is no dispute about their authenticity.  *See* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

## III.    Analysis

### A. Title VII Discrimination (Count I)

Appleton's second amended complaint realleges that the School Board discriminated against him based on his race in violation of Title VII.  (*See* Sec. Am. Compl. ¶¶ 46–56.)  The court previously found that Appleton's amended complaint sufficiently alleged an adverse

employment action based on his constructive discharge. (*See* Dkt. 24 at 9–12.)  But the court

found next that Appleton did not sufficiently allege that his job performance was satisfactory

at the time of his constructive discharge. (*See id.* at 12–13.)  Appleton's second amended

complaint adds a paragraph with several new factual allegations related to his job performance.

(*See* Sec. Am. Compl. ¶ 14.)

At the motion to dismiss stage, Appleton must at least plausibly allege satisfactory job

performance *at the time of his adverse employment action. See Barringer-Brown v. Va. Cmty. Coll. Sys.*,

No. 3:24-cv-00465, 2025 WL 2722661, at *8 (E.D. Va. Sep. 24, 2025) (dismissing a Title VII

discrimination claim because "Plaintiff has not established that her job performance was

satisfactory at the time of her discharge"); *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704

(4th Cir. 2023) (explaining the burden-shifting framework requires a plaintiff to show that he

was meeting his "employer's legitimate expectations at the time of the adverse employment

action"); *Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 494–95 (D. Md. 2011) (citing *Bodkin

v. Town of Strasburg*, 386 F. App'x 411, 413–14 (4th Cir. 2010)) (same).  Despite the most recent

amendments to his complaint, he still fails to do so.

First, almost all of Appleton's new factual allegations in support of this element relate

to his job performance *before* March 27, 2024, when he was placed on administrative leave after

removing a disruptive student from class. (*See* Sec. Am. Compl. ¶¶ 19–21.)  Appleton's new

allegations—that he received a positive evaluation from an "external teaching specialist" the

prior semester, (*id.* ¶ 14a); that he created a new class on Nutrition and Wellness for the 2023-

2024 academic year, (*id.* ¶ 14b); that the class was the first of its kind at the school and was

well-enrolled in the fall semester, (*id.* ¶¶ 14c, 14d); that he was assigned to teach three Nutrition and Wellness classes in the spring after only teaching one in the fall, (*id.* ¶ 14e); that he was passionate about teaching the class, (*id.* ¶ 14f); and that emails to Appleton from Dr. Renee Honaker[1] and Wayne Price[2] in February 2024 did not "express any concerns about [his] performance as a teacher," (*id.* ¶¶ 14g, 14h)—all relate to his job performance through February 2024, before the late March 2024 incident involving a student, which resulted in him being placed on administrative leave. Appleton's second amended complaint still lacks any factual allegation supporting an inference that the School Board was satisfied with his job performance at the time of and any time after the incident with the student in late March, including in May, when he alleges that he was constructively discharged. *See Dimaano v. Va. Ctr. for Behav. Rehab.*, No. 3:23-cv-00312, 2024 WL 3823795, at *18 (E.D. Va. Aug. 13, 2024) (dismissing a Title VII retaliation claim in part because the plaintiff "fail[ed] to plausibly allege that at the time of his discharge, he was performing at a level that met [his employer's] legitimate expectations").

Next, Appleton cannot lean on his own opinion of his job performance to sufficiently allege that he was meeting his employer's expectations. In evaluating whether an employee met his employer's expectations at the time of an adverse employment action, "it is the perception of the decisionmaker which is relevant, not the self-assessment of the plaintiff." *Giles*, 59 F.4th at 704 (cleaned up). Absent from Appleton's amended allegations are any that

---

[1] Honaker was at all relevant times the Executive Director of Secondary Education for Orange County Public Schools. (Sec. Am. Compl. ¶ 14e.)

[2] Price was at all relevant times the Principal of Orange County High School. (*Id.* ¶ 14d.)

would support an inference that the School Board, or any of Appleton's supervisors, were satisfied with his job performance by late April 2024. His own assertions that he "performed his duties in an outstanding manner," (Sec. Am. Compl. ¶ 14), and that his "passion for teaching was evident," (*id.* ¶ 14f), are not sufficient at this stage. Nor is his allegation that an "external teaching specialist" gave him a positive teaching evaluation, (*id.* ¶ 14a), as he does not allege that the specialist was his supervisor or was related to the School Board. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (noting that the opinions of the plaintiffs' coworkers as to the quality of her work were "close to irrelevant" to showing satisfactory job performance).

Finally, Appleton appears to argue that a lack of formal feedback about his job performance during the 2023-2024 academic year suggests satisfactory job performance. (*See* Sec. Am. Compl. ¶ 14i; Pl.'s Resp. at 8 & n.2 (Dkt. 34).) He argues that the School Board "should not be able to benefit" from failing to provide him with a formal evaluation, since a positive formal evaluation in May 2024 could have evidenced satisfactory job performance. (*See* Pl.'s Resp. at 8 n.2.) But the absence of a review does not necessarily suggest satisfactory performance. Even drawing inferences in Appleton's favor, as this court must at this stage, it would be conjecture to assume that such an evaluation, if it had occurred, would have been positive to sufficiently allege satisfactory job performance.

Appleton now argues for the first time that the court should apply the Fourth Circuit's framework from *Cook v. CSX Transportation Corp.*, 988 F.2d 507 (4th Cir. 1993) for Title VII discrimination claims alleging disparate enforcement of disciplinary measures. (*See* Pl.'s Resp.

at 1–2.)  Such claims do not require proof of satisfactory job performance.  *See Cook*, 988 F.2d at 511; *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985).  Those claims, though, still require that the "plaintiff's prohibited conduct was comparable in seriousness to misconduct of employees outside [plaintiff's] protected class."  *Seabrook v. Driscoll*, 148 F.4th 264, 270 (4th Cir. 2025).

Here, Appleton does not allege any "prohibited conduct."  *Id.*  The second amended complaint is devoid of any details regarding Appleton's actions taken in response to the student's conduct; in fact, he only alleges conclusively that he "responded to [the disruptive] student's continued aggressive and threatening behavior . . . in a reasonable manner."  (Sec. Am. Compl. ¶ 20.)  At the same time, he alleges that his comparator, Coach Heppe, "engaged in outrageous and abusive conduct" towards middle school students on the baseball team.  (*Id.* ¶ 34.)  While Appleton argues that the discrepancy in the conduct "is precisely the point," (Pl.'s Resp. at 2 n.1), he misses the purpose of the requirement that the misconduct be of comparable seriousness, which is to show that race, rather than some other factor related to the conduct itself, motivated the dissimilar sanctions.

Further, Appleton fails to sufficiently allege that Coach Heppe was a similarly situated comparator.  In determining what makes two comparators "similar" for purposes of Title VII claims, courts consider "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision."  *Johnson v. Baltimore City*, 163

F.4th 808, 815 (4th Cir. 2026) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019)).  Appleton fails to allege sufficient information for any of these elements.  Therefore, even under the *Cook* standard, Appleton still fails to state a claim for Title VII discrimination.  Accordingly, the court finds that Appleton failed to sufficiently allege his Title VII discrimination claim and will dismiss Count I.

## B.  Title VII Retaliation (Count III)

Appleton's second amended complaint realleges that the School Board violated Title VII by constructively terminating his employment in retaliation for his complaining about racial discrimination.  (Sec. Am. Compl. ¶¶ 69–79.)  The court previously found that even assuming Appleton's complaints qualified as protected activity, his amended complaint failed to sufficiently allege a non-speculative causal link between protected activity and an adverse employment action.  (*See* Dkt. 24 at 15–18.)  Appleton's second amended complaint adds factual allegations purporting to establish this causal link.  (*See* Sec. Am. Compl. ¶¶ 22–24, 27, 31–32.)

Appleton argues that the allegations in the second amended complaint "necessitate" that the court reach a different conclusion than it did in its last assessment.  (Pl.'s Resp. at 17.)  The court disagrees.  Even with new allegations, Appleton still falls short of pleading a non-speculative causal link between any assumed protected activity and his constructive discharge.  Appleton points first to the "difference in the nature and pressure" between Price's initial comment about a willingness to accept Plaintiff's resignation, (*id.* (citing Sec. Am. Compl. ¶ 21))—which happened before Appleton's April 12 discrimination complaint—and Yvonne

Dawson's[3] "forceful, pressurized" pushing of Appleton to resign merely four days after his April 12 complaint, (*id.* (citing Sec. Am. Compl. ¶¶ 26–27)). Appleton's new amendments to these allegations emphasize the "forceful" nature of Dawson's comments but otherwise do not add any facts. (*See* Sec. Am. Compl. ¶ 27.) The court previously found that the nature and timing of Price's and Dawson's comments to Appleton did not plausibly show that his constructive discharge was retaliatory. (*See* Dkt. 24 at 17–18.) Appleton's amendments, thus, do not provide any new information concerning these allegations and the timing of alleged events, and the court sees no reason to disturb its previous finding.

Appleton points next to the fact that Defendant was motivated by a desire "not to have to address [his] concerns about discrimination" and thus "never conducted any investigation into [his] complaint of discrimination." (Pl.'s Resp. at 17–18.) In the second amended complaint, Appleton only rephrases his allegation that Dawson did not ask him during their meetings what he meant when he complained of "discrimination." (Sec. Am. Compl. ¶ 31.) Here, too, the court previously found that Dawson's "failure to mention [Appleton's] discrimination complaint during their meetings in late April" does not demonstrate causation.[4] (Dkt. 24 at 18.) The more specific allegation that Dawson did not ask what Appleton meant by the word "discrimination" does not change the nature of the allegation and does not raise an inference of causation above a speculative level.

---

[3] Dawson was at all relevant times the Executive Director of Human Resources for the Orange County Public Schools. (Sec. Am. Compl. ¶ 23.)

[4] Appleton also newly alleges, after noting that he is Black and Dawson is Caucasian, that "under the circumstances, it was clear that he was complaining [to Dawson] about the issue of race discrimination." (Sec. Am. Compl. ¶ 23.) It is unclear what "circumstances" Appleton is referring to beyond his race and Dawson's race, but regardless, this conclusory allegation is insufficient to allege a causal link.

Appleton also adds an allegation that he was never notified in writing of the results of any investigation into the March 27 incident with the disruptive student, despite Price telling him he would be notified. (Sec. Am. Compl. ¶¶ 31–32.) This does not, as Appleton argues, raise the inference that his handling of that incident was not the basis for his eventual constructive discharge, nor that the basis was his race or his complaints about discrimination. (*See id.* ¶ 32.) It is clear from Appleton's allegations that his handling of the incident concerned his supervisors, evidenced by his placement on paid leave "pending the results of an investigation into the incident in question." (*Id.* ¶ 22.) And as the court has stated previously, his placement on administrative leave due to this incident *before* he complained of discrimination undermines his claim that his eventual constructive discharge was retaliatory. (*See* Dkt. 24 at 16–17 (citing *Dimaano v. Va. Ctr. for Behav. Rehab.*, No. 3:23-cv-00312, 2024 WL 3823795, at *20–21 (E.D. Va. Aug. 13, 2024) (dismissing Title VII retaliation claim for lack of causation where the plaintiff was under investigation for misconduct at the time of his alleged protected activity and failed to allege that he was meeting legitimate performance expectations)).) None of Appleton's new allegations[5] cure his previous complaint's failure to support a causal link between his April 12 complaint and his constructive discharge. Accordingly, the court finds that Appleton failed to sufficiently allege his Title VII retaliation claim and will dismiss Count III.

---

[5] Appleton's substantive amendments include new allegations and clarifications about the March 27 incident, (Sec. Am. Compl. ¶ 20), and the Superintendent reporting Coach Heppe's behavior to the School Board, (*id.* ¶ 35). Appleton does not argue, nor does the court find, that these allegations are relevant to the existence of a causal link between Appleton's discrimination complaint and his constructive discharge.

### C.  State Law Claims (Counts II, IV, and V)

Both parties ask the court to exercise supplemental jurisdiction over the state-law claims here.  (Def.'s Reply at 2–3; Pl.'s Resp. at 12–13.)  But nothing in Appleton's second amended complaint or the parties' briefing convinces the court that it is *now* appropriate to exercise supplemental jurisdiction over Appleton's state-law claims.  For many of the same reasons as the court detailed in its prior memorandum opinion, (*see* Dkt. 24 at 18–20), the court will again decline to exercise supplemental jurisdiction over Counts II, IV, and V, and will dismiss those counts without prejudice.

## IV.    Conclusion

For the above reasons, the court will grant Defendant's motion to dismiss.  Counts I and III will be dismissed with prejudice.[6]  The court declines to exercise supplemental jurisdiction over Counts II, IV, and V, and will dismiss those claims without prejudice.

An appropriate Order will issue.

**ENTERED** this __10th__ day of August, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[6] The court granted Appleton leave to file a second amended complaint with the full benefit of the court's reasoning and Defendant's argument as to why his first amended complaint was deficient.  (*See* Dkt. 25.)  Appleton, who is counseled, still fails to state a claim, and the court thus finds that another opportunity to amend would be futile.  In these circumstances, dismissal with prejudice is appropriate.  *See Harden v. Budget Rent A Car Sys.*, 726 F. Supp. 3d 415, 440 (D. Md. 2024) ("[W]here a plaintiff has had the opportunity to amend her complaint to cure any deficiencies, or where amendment would otherwise be futile, dismissal with prejudice is appropriate.").